UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

**ASRAR AHMED KHAN;**
**DAVID LANDON MURPHY**,

    Plaintiffs,

vs.                                                                                       No. CIV 12-0475 RB/KBM

**THE BANK OF NEW YORK MELLON FNA**
**THE BANK OF NEW YORK, as Trustee for**
**The Certificate Holders of CWMBS, Inc.**
**CHL Mortgage Pass-Through Trust Certificates,**
**Series 2005-06; BANK OF AMERICA, N.A.;**
**RECONTRUST COMPANY,N.A.; and**
**SELECT PORTFOLIO SERVICING INC.,**
**DOES 1 to 10,**

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on the Bank of New York's, Bank of America's and ReconTrust Company's *Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1)*, filed June 4, 2012 [Doc. 6]; and on Select Portfolio Servicing, Inc.'s *Motion to Dismiss Pursuant to Rule 12(b)(1)*, filed June 8, 2012 [Doc. 8], which adopts and incorporates by reference all of the statements, points, and legal authorities in Document 6.  The Defendants contend that this Court lacks subject-matter jurisdiction because the parties are not wholly diverse and because there is no federal question in this case; and that venue here is improper under 28 U.S.C. § 1291.   The Court will grant the motions.

**I. Background**

Pro se Plaintiffs Asrar Ahmed Khan[1], who is a California resident, and David Landon Murphy,

---

[1] The Court has some concern that Khan may not have actually signed the Complaint, as the notary public only certified that Murphy signed it.

a New Mexico resident, filed a Complaint entitled *Complaint of Unlawful Foreclosure* on May 3, 2012, in which they designate themselves as "secured party creditors." Compl. at 1. The property that is the subject of this lawsuit is in California. *See id.* at 2. The Complaint states that, in 2004, Khan signed a trust deed and note on the property, which is "in the process" of being foreclosed by the Bank of America. *Id.* at 9-10. It appears, however, that Murphy may have no prior or current legal interest whatsoever in the property that is the subject of this Complaint. The Court takes judicial notice[2] that Murphy has previously filed another frivolous complaint in this District with June Scott, in a case in which he also apparently held no legal interest in the real property that had been foreclosed, and that Murphy appeared alone at hearings. *See Scott v. HSBC Bank USA, N.A.*, No. 11cv1084 JP/ACT, Doc. 53 at 2-3 (July 24, 2012) (holding that the "Complaint of Unlawful Foreclosure" would be dismissed because it constituted "a direct attack on a final judgment of the state court and therefore must be dismissed under Rule 12(b)(1) and the *Rooker-Feldman* doctrine for lack of subject matter jurisdiction" and that "[t]he remainder of Plaintiffs' allegations fail to state a plausible claim for relief and therefore should be dismissed under Rule 12(b)(6) for failure to state a claim"). Scott and Murphy raised many of the same arguments that Khan and Murphy make in the case at bar. And Khan and Murphy have attached the same lengthy document that Scott and Murphy attached as Exhibit C to the Complaint in No. 11cv1084 ("a PowerPoint presentation from the Florida Attorney General's Office titled "Unfair, Deceptive and Unconscionable Acts in Foreclosure Cases"). Further, as in the *Scott* case, each page of the Complaint is headed "In the Admiralty,"

---

[2] *See St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) ([F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.")

which has no legal meaning of which the Court is aware, since this case clearly is not one invoking the admiralty jurisdiction of the Court. *See Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 267-68 (1972) (noting that admiralty jurisdiction depends upon whether a wrong occurs on navigable waters and the "wrong bear[s] a significant relationship to traditional maritime activity"). The Complaint mainly consists of the Plaintiffs' legal conclusions, with the Plaintiffs listing a vast array of statutory and common-law theories of liability, lumped all together in a conclusory, undifferentiated fashion.

The Court also notes that Nigel Rudlin, who signed the certificates of mailing of the complaints and/or responses in both the *Scott* case and the case at bar, *see* No. 11cv1084 Doc. 1 at 14; No. 12cv475 Doc. 11 at 5, has been involved with Murphy in filing a frivolous involuntary bankruptcy petition against the Bank of America in the Colorado Bankruptcy Court that Murphy spearheaded and prosecuted. *See In re Bank of America, N.A.*, No. 11-24503 MER, 2011 WL 2493056 (Bankr. D. Colo. June 21, 2011). The Bankruptcy Court noted that Murphy claimed to be a "principle secured party creditor" of the Bank of America in the amount of $30,000,000, based on an undescribed "exemption;" that Rudlin claimed to be a "secured party creditor" in the amount of $1,000,000, based on an undescribed "exemption;" and that none of the claimed creditors supported their claims with any documentation. *See id.*. Murphy and Rudlin based their "secured party creditor" theory on the frivolous contention that the

> Emergency Banking Act of 1933 served to dissolve the government of the United States and cause it to become bankrupt. Accordingly, they contend the people of the United States are the providers of underwriting credit in every transaction involving the creation of new public funds, and so are the providers of underwriting credit for funds created by promissory notes used in the creation of mortgages and other activities undertaken by Bank of America. Therefore, the Petitioning Creditors assert they are the owners of the promissory notes relating to mortgage transactions entered

3

> into by Bank of America and are secured creditors of that entity. Further, it appears that use of the word "exemption" in the involuntary petition was not used as such term is interpreted in the bankruptcy context, but rather refers to the "government of the people" theory expounded by the Petitioning Creditors.

*Id.* at *4. The Bankruptcy Court rejected this theory and dismissed the involuntary petition. *See id.* It also found that Murphy, Rudlin, and the other alleged creditors were liable to the Bank of America for its costs and attorney fees for filing an involuntary bankruptcy petition in bad faith, and enjoined them from filing an involuntary petition against the Bank or its affiliates in any federal bankruptcy court in the future. *See In re Bank of America, N.A.,* No. 11-24503 Doc. 28 (Bankr. D. Colo. Aug. 2, 2011). The Court takes judicial notice that Rudlin has also been an unsuccessful plaintiff in several cases against banks and mortgage servicing companies, including a class-action lawsuit alleging wrongful foreclosure on a property he owned in Nevada. *See Dalton v. CitiMortgage, Inc.,* No. 4-2009cv00534 Doc. 299 (D. Nev. Oct. 3, 2011) (rejecting "contention that naming MERS as a beneficiary on the deeds of trust, and the subsequent operation of the MERS system, splits the MERS deeds of trust from their promissory notes and renders these notes unsecured and unenforceable;" noting that "the tort of wrongful foreclosure requires Plaintiffs to establish that they were not in default when the power of sale was exercised or that they are able to tender the debt owed on the mortgage" and that "[b]y failing to plead that their loans are not in default, Plaintiffs' claim for wrongful foreclosure is barred as a matter of law and will be dismissed for failure to state a claim;" and dismissing all claims with prejudice).

## II. Allegations in the Complaint

The Complaint alleges that, in 2004 Khan was "induced into signing a Note, Deed of Trust, and Mortgage for the purchase of the real 'property'" located in California; that the loan "was

converted into a security within days of signing and sold numerous times;" that the note was eventually sold to a group of investors; and that the "Trust deed along with the Note were [] assigned to 'BOA' on August 1, 2011." Compl. at 5, ¶ 8; *id.* at 9, ¶ 15. The Plaintiffs contend that the original note "is owned as a REMIC trust asset, which prohibits a trustee from engaging in any legal action regarding any individual notes within the trust." Compl. at 11, ¶ 18. When Khan apparently failed to make his loan payments, the Bank of America began foreclosure proceedings by "initiating a foreclosure sale through their subsidiary RECON." *Id.* at 4, ¶ 7; *id.* at 7, ¶ 12. The Complaint cites several federal statutes, but none of the Complaint's allegations and confusing legal conclusions appear to actually relate to the statutes. Instead, the factual allegations in the Complaint are dedicated to explaining why, in the Plaintiffs' opinion, the foreclosure proceedings are wrongful or invalid. *See, e.g.*, Compl. at 2, ¶ 4 (contending that "Defendants are in direct violation of the Gramm-Leach-Bliley Act of 15 USC Subchapter I, Sec. 6801-6809" by failing to respect the privacy of its customers because "the institution authorized by this individuals [sic] name does not appear on any documents" that the Defendants are using in the foreclosure proceedings); Compl. at 3, ¶ 5 (contending that "Defendants gave no value for their claim, they did not use their money to fund the loan and used a debt instrument to acquire Plaintiff's note and have taken advantage of Plaintiff and Investment Bankers and others, in violation of Federal Statutes (28 USC 1331) Right to Privacy, CIVIL RICO, 4th and 5th Amendments to the Constitution, USC 18 242, 243, but not limited to MAIL FRAUD, TILA, Breach of Trust, Slander of Title, Fraud, Common Law Fraud, Hand Writing Fraud including Robo Signing, Fair Debt Collections Practices Act, Interference with Contractual Relations, Truth in Lending Act, Lack of Diligence and misrepresenting their products, services and induced Plaintiff into believing in a mortgage loan product and servicing agreement that has damaged

Plaintiff"); *id.* at 4, ¶ 7 ("Defendants . . . are in the process of converting Plaintiff's real 'property' through a trust deed sale, to their own in direct violation of the 4th amendment to the United States Constitution, the right to be secure in one's real property"). Plaintiffs conclude that unspecified defendants violated "18 USC 1005, Part 1, Chapter 47, Statute 1005," which prohibits the making of a "false entry" or assignment of an obligation "with intent to defraud," Compl. at 5, ¶ 9, but there are no facts to support such a claim.

The Plaintiffs contend that the Bank of America cannot foreclose on the note because it "was already delivered to a Mortgage Backed Security Pool, with no recourse;" *id.* at 7, ¶ 12; and that the Bank of America does not have constitutional standing "to bring a Foreclosure Action" because it is not a real party in interest or holder in due course or the "beneficiary" of the payments. Compl. at 8, ¶¶ 12, 13. All of these arguments, of course, are defenses to the apparently still-pending foreclosure proceedings in California.

In their request for relief, the Plaintiffs ask this Court only to (i) intervene in the California foreclosure proceedings to "dismiss all claims brought by Defendants;" (ii) require the Bank of America to prove to this Court at a hearing that it has the right to foreclose on the California property; and (iii) require the Defendants "to remove their security interest in the subject property." Compl. at 13-14.

**III. Analysis.**

**A. Murphy has not established his standing to bring suit and must be dismissed as a party.**

Although not raised by the parties, "[i]t is well established that any party, including the court *sua sponte*, can raise the issue of standing for the first time at any stage of the litigation, including on

appeal." *New England Health Care Employees Pension Fund v. Woodruff*, 512 F.3d 1283, 1288 (10th Cir. 2008). Based on the allegations in the Complaint, it appears that Murphy has no standing to bring this Complaint for wrongful foreclosure. "A plaintiff bears the burden of proving standing" to bring suit. *Id*. Thus, the plaintiff must "com[e] forward with evidence of specific facts which prove standing." *Bear Lodge Multiple Use Ass'n v. Babbit*, 175 F.3d 814, 821 (10th Cir. 1999).

> There are three elements to Article III standing: 1) injury-in-fact; 2) causation; and 3) redressability. An injury-in-fact is an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, i.e., not conjectural or hypothetical. Causation is found upon a showing that the injury is fairly traceable to the challenged action of the defendant, rather than some third party not before the court. Redressability requires the plaintiff to show that it is likely that a favorable court decision will redress the injury to the plaintiff.

*Utah Animal Rights Coalition v. Salt Lake City Corp.*, 371 F.3d 1248, 1255 (10th Cir. 2004). (quotation marks, bracket, and citations omitted). "[T]he real party in interest is the one who, under applicable substantive law, has the legal right to bring suit." *FDIC v. Geldermann, Inc.*, 975 F.2d 695, 698 (10th Cir. 1992) (internal quotation marks omitted); *see L.R. Prop. Mgmt., Inc. v. Grebe*, 96 N.M. 22, 23, 627 P.2d 864, 865 (1981) ("A real party in interest is . . . one [who] is the owner of the right being enforced and is in a position to discharge the defendant from the liability being asserted in the suit.") (internal quotation marks omitted). A person who is not a real party in interest has no standing to bring suit because he cannot show an injury in fact of his *own* legally protected interest. Here, the Complaint alleges that only Khan signed the note and obtained the mortgage on the California property. There are no allegations that Murphy has any legal or equitable rights in the property, and therefore, is not a real party in interest regarding the foreclosure on the property that Khan owns. *See Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004) (noting that an element of prudential standing is "the general prohibition on a litigant's raising another person's legal

7

rights"). Murphy's bald claim to be a "secured party creditor" is not supported with any factual allegations, and there are no indications regarding who the debtor is that allegedly owes him money under a secured debt. Therefore, the Court will dismiss Murphy as a party to this action, and he may not prepare or sign any documents on Khan's behalf, nor may he respond to litigation or appear in Court on Khan's behalf because "[a] litigant may bring his own claims to federal court without counsel, but not the claims of others." *Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000); *cf. Meeker v. Kercher*, 782 F.2d 153, 154 (10th Cir. 1986) (per curiam) ("We hold that under Fed. R. Civ. P. 17(c) and 28 U.S.C. § 1654, a minor child cannot bring suit through a parent acting as next friend if the parent is not represented by an attorney.").

Murphy is warned that he shall not again attempt to file a complaint on behalf of any other person by alleging that he also is a real party in interest when there are no facts to support such a claim, and that he may not base his alleged status of "secured party creditor" on his frivolous theory derived from his interpretation of the effect of the Emergency Banking Act of 1933. If he violates this Order, the Court will impose filing restrictions against him.

If Khan files any future documents in this case, his signature must be notarized.

### B. The Plaintiffs have not established diversity jurisdiction.

Even if Murphy were a valid plaintiff, diversity jurisdiction is not present in this case. Federal courts may have jurisdiction where all of the plaintiffs are citizens of different states than all of the defendants and the amount in controversy exceeds $75,000. *See generally* 28 U.S.C. § 1332; *Ravenswood Inv. Co. v. Avalon Corr. Servs.*, 651 F.3d 1219, 1223 (10th Cir. 2011) ("When jurisdiction is premised on diversity of citizenship under 28 U.S.C. § 1332(a), . . . each plaintiff must be diverse from each defendant to have what is known as complete diversity.").

The Complaint contains no facts regarding the citizenship of Defendant ReconTrust Company. A corporation is "deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. §1332(c)(1). The term "'principal place of business' is best read as referring to the place where a corporation's officers direct, control and coordinate the corporation's activities . . . . [I]n practice it should normally be the place where the corporation maintains its headquarters." *Hertz Corp. v. Friend*, 559 U.S. ___, 130 S. Ct. 1181, 1192 (2010). Defendants contend that Defendant ReconTrust, N.A., is "headquartered in California, [and, therefore] is a California citizen." Doc. 6 at 2. *See Carrasco v. HSBC Bank USA, N.A.*, No. C–11–2711 EMC, 2012 WL 646251, *2 (N.D. Cal. Feb. 28, 2012) ("Defendant ReconTrust is headquartered in Simi Valley, California, and has been found by numerous courts to be a California citizen."); *Cotera v. BAC Home Loans Servicing*, LP, No. 3:11-cv-1023-ST, 2011 WL 6013834, *1 (D. Or. Nov. 3, 2011) ("ReconTrust is a national association with its main office in California and therefore is a citizen of California for purposes of jurisdiction based on diversity of citizenship."). Because Khan is also a California citizen, there is not complete diversity, so Khan may not invoke the Court's jurisdiction under the diversity statute.

In response to the Defendants' motion to dismiss, Murphy and Khan contend only that "there is no diversity of citizenship issue" because "RECONTRUST COMPANY NA has no standing and the parent company is BANK OF AMERICA and is headquartered in Charlotte North Carolina." Doc. 11 at 1. The Court does not understand Plaintiffs' comment regarding ReconTrust's "standing." The Court concludes that complete diversity does not exist in this case.

### C. The Plaintiffs have not established federal-question jurisdiction.

Pursuant to 28 U.S.C. § 1331, "[t]he district courts . . . have original jurisdiction of all civil

9

actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The burden of proving federal-question jurisdiction rests upon the party invoking federal jurisdiction. *See Sac & Fox Nation v. Cuomo*, 193 F.3d 1162, 1165 (10th Cir. 1999). "Under the well-pleaded complaint rule, in order to invoke federal question jurisdiction under 28 U.S.C. § 1331 . . . , a federal question must appear on the face of the plaintiff's complaint . . . ." *Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1220 (10th Cir. 2011). "[T]he complaint must identify the statutory or constitutional provision under which the claim arises, and allege sufficient facts to show that the case is one arising under federal law." *Sac & Fox Nation*, 193 F.3d at 1165-66. The Plaintiff must "'establish[ ]either that federal law creates the cause of action or that the plaintiff's right to relief depends on resolution of a substantial question of federal law.'" *Id.* at 1165.

Defendants contend that Khan has not stated facts to support a claim for violation of a federal statute in his Complaint, *see* Doc. 6 at 4, and he does not respond to that contention in his response to the motion to dismiss, other than to make the conclusory statement that "it is improper and frivolous to pretend that this Complaint is not under the well plead rule and it must be assumed to be the truth." Doc. 11 at 3.

There is no federal statutory or common-law tort for wrongful foreclosure of which the Court is aware. *See Anderson v. United States*, 85 Fed. Cl. 532, 544 (Fed. Cl. 2009) (noting that, even when a VA loan is at issue, "state law and general property law principles, when not in conflict with federal law, are controlling for the law of mortgages in relation to the home loan guaranty program. *See Rank*, 677 F.2d at 697 (noting that " 'mortgage foreclosure has traditionally been a matter for state courts and state law' " and concluding that it was "most improbable that the VA Act was intended to authorize the federal courts to create, with respect to the area of VA-guarantied home

10

loans, a federal common law of mortgages to supplement or supplant the law provided by the states" (*quoting Roberts v. Cameron-Brown Co.*, 556 F.2d 356, 361 (5th Cir.1977))); *Fitzgerald*, 650 F.2d at 362 (noting that the regulations under the VA home loan guaranty program "are to be interpreted in light of traditional property law practices")). Instead, each state has codified statutes providing for the procedures for foreclosing on real property. Sections 2924 through 2924k of the California Civil Code "provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust" on property located in California. *Moeller v. Lien*, 25 Cal. App. 4th 822, 834 (1994). "The purposes of this comprehensive scheme are threefold: (1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser." *Id.* Khan seeks to avoid the "quick, inexpensive and efficient remedy" his creditors seek by attempting to haul them into a Court thousands of miles away from the property, even though the California proceedings are also designed to protect him from a wrongful loss of the property and he may judicially challenge any sale. *See id.*

Khan asserts no federal claims and he brought this case in diversity, so his "claims for relief must be grounded in state law." *Commonwealth Prop. Advocates, LLC v. Mort. Elec. Registration Sys., Inc.* 680 F.3d 1194, 1202 (10th Cir. 2011). Briefly mentioning a federal statute or making a conclusory statement that a defendant violated constitutional rights[3] will not invoke the jurisdiction

---

[3] Khan asserts that, because the Bank of America allegedly violated, in some unspecified way, a consent order to which he is not a party, the Bank has violated his "constitutional rights to due process, equity, protection of property and pursuit of happiness." Compl. at 10, ¶ 16. But the Bank of America is a private corporate entity and not a state actor, so this conclusory statement cannot be interpreted as an oblique attempt to bring a claim under 42 U.S.C. § 1983 or invoke the Court's

11

of this Court[4]. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991) (stating that "[t]he broad

---

subject-matter jurisdiction. *See Mehdipour v. Matthews*, No. 10-6073, 386 Fed. App'x 775, 778 n.3, 2010 WL 2748802, *3 n.3 (10th Cir. July 13, 2010) (unpublished) ("[A] plaintiff's failure to properly allege a 'state action' in a § 1983 complaint strips the district court of subject matter jurisdiction [] if jurisdiction is alleged under 28 U.S.C. § 1343(3). *See Elliott v. Chrysler Fin.*, 149 Fed. Appx. 766, 768-69 (10th Cir. 2005); *see also Monks v. Hetherington*, 573 F.2d 1164, 1167 (10th Cir. 1978) ("There is no demonstration of state action and, therefore, no basis for civil rights jurisdiction [pursuant to 28 U.S.C. § 1343(3)] in the case at bar.")").

[4] In the wake of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and the more recent case of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), courts must carefully scrutinize a plaintiff's complaint to determine if an actionable claim is asserted. In *Twombly*, the Court noted that the pleading standard of FED. R. CIV. P. 8 does not require "detailed factual allegations," 550 U.S. at 555, but the Rule demands more than an unadorned "the defendant-unlawfully-harmed-me" account, *see Iqbal*, 556 U.S. at 678. The Supreme Court warned against pleadings that offer "labels and conclusions" or "a formulaic recitation of the elements of the cause of action . . . ." *Id.* (internal quotation marks omitted). These, the Court stated, "will not do." *Id.* (internal quotation marks omitted). Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* (internal quotation marks and bracket omitted). In *Iqbal*, the Supreme Court noted:

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement" but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (internal citations omitted).

The courts should take a two-step approach in determining whether a complaint states a claim upon which relief may be granted. First, it "identif[ies] the [conclusory] allegations in the complaint that are not entitled to the assumption of truth." *Id.* at 680. Then it only "consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Id.* at 681; *see id.* at 686 (rejecting the plaintiff's argument that he sufficiently stated a claim for relief by generally alleging that the defendants "discriminated against him 'on account of [his] religion, race, and/or national origin and for no legitimate penological interest,'" and stating, "[w]ere we required to accept this allegation as true, respondent's complaint would survive petitioners' motion to dismiss. But the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context.") (citations omitted). The Court has applied *Twombly* and *Iqbal* in discerning whether Khan as set forth factual allegations sufficient to invoke this Court's federal-question jurisdiction.

reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based"); *Carrasco*, 2012 WL 646251, *3 (holding that, even though Plaintiffs cursorily alleged violation of the federal Truth In Lending Act, because they failed to plead any facts to support claims under Act, "federal question jurisdiction does not exist"). And Khan does not seek damages for violation of any federal statute. *See* Compl. at 13. The Court concludes that Khan has not alleged sufficient facts to support federal-question jurisdiction.

### D. In the alternative, venue is not proper in New Mexico.

Finally, in the alternative, Defendants contend that the case must be dismissed under 28 U.S.C. § 1391 because venue is not proper in New Mexico. The Court agrees. The Plaintiffs did not respond to that argument. Venue is proper in a judicial district where all defendants reside, or in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391 (b)(1), (2). The Complaint conclusively establishes that the foreclosure events that are allegedly going to cause injury to Khan are occurring in California, and that the property that is the subject of the foreclosure proceedings is in California. None of the Defendants are citizens of New Mexico. Venue is, therefore, improper in this District[5].

**IT IS ORDERED** that the Defendants' motions to dismiss [Docs. 6, 8] are GRANTED and this case is DISMISSED WITHOUT PREJUDICE for lack of subject-matter jurisdiction.

  _____
  ROBERT C. BRACK
  UNITED STATES DISTRICT JUDGE

---

[5] The Court notes that Murphy and Scott unsuccessfully attempted to remove the district-court proceedings in the *Scott* case to Alabama. *See* No. 11cv1084 Doc. 53 at 19 (finding that the notice of removal was "totally devoid of merit and should be stricken from the record").

13